BOOTH, Judge.
This cause is before us on appeal from a compensation order. Appellants raise several arguments, only one of which requires discussion. Appellants contend that it is impossible to determine from the compensation order whether the judge of compensation claims (JCC) overlooked or ignored evidence that claimant was offered a position by appellants within his physical restrictions, and therefore voluntarily limited his income by refusing the position.
Claimant Harry Dahl was a lieutenant in the City of West Palm Beach Fire Department (Fire Department) when, on April 27, 1984, he sustained an injury within the course of his employment, by overexerting himself and/or inhaling smoke while fighting a fire. He underwent treatment at the emergency room of Good Samaritan Hospital and subsequently underwent a cardiac catheterization. Claimant was diagnosed as having atrial tachycardia and ventricular tachycardia, and the latter condition was believed by claimant’s treating physician to be life-threatening. Claimant’s treating physician advised limiting stress and avoiding any sudden, strenuous, heavy physical activity. The physician agreed that claimant could perform work such as public relations for the Fire Department and review *457 ing plans submitted to the City Building Department to determine compliance with fire codes. The physician was clear, however, that claimant could not perform the ordinary duties of a fire fighter. Claimant retired from the Fire Department in August 1984 and thereafter received a pension and/or workers’ compensation benefits.
The evidence that claimant was offered a position within his restrictions was as follows. In November 1986, the Chief of the Fire Department sent claimant a letter offering him a position as follows:
This is commensurate with your position of Lieutenant upon retirement. The current department needs do not require that this vacancy be filled by an individual capable of engaging in combat duty. More specifically, the duties assigned to this position would be in the fire inspection bureau (as provided for in the job classification for Fire Lieutenant). This would primarily entail duties of plans review, public relations work and limited field inspections. In short, the aforementioned duties would only be of a sedentary nature.
Claimant testified that ordinarily, fire inspectors performed duties such as enforcement of city fire codes and inspection of premises immediately after extinguishment of a major blaze. Occasionally, fire inspectors were required to perform ordinary fire-fighting duties. Fire inspectors were required to be state certified as fire fighters. Fire fighters had to be recertified every two years and had to pass an annual physical examination for recertification. Claimant had lost his certification on or before August 1986.
Claimant visited the Fire Chief, seeking an official description of the offered position. The Fire Chief did not give claimant a description of the position other than the letter. Claimant obtained from the Fire Department’s personnel office an official description for the position of fire inspector. The description provided that fire inspectors were required to perform regular fire-fighting duties in the event of multiple alarm (serious) fires.
Thereafter, in December 1986, the assistant city attorney responsible for claimant’s workers’ compensation claim sent claimant’s counsel a letter, which provided as follows:
The current vacancy exists for the position of Fire Lieutenant, which according to the job classification includes among other duties sedentary duties such as fire inspection as well as active combat duties. The city offers to extend the position to Mr. Dahl which would not involve active combat duty. His duty would be limited to assignment in the Fire Inspection Bureau. As indicated in Chief Reese’s letter of November 8, his duties would entail plan review, public relations work and limited field inspections. Mr. Dahl would not be required to engage in any active combat duty.
The City’s representative testified that in November 1986, the Chief of the Fire Department had approved a fire inspector position for claimant which did not require claimant to fight or investigate fires. The position would primarily have required claimant to review construction plans and make some public appearances to lecture and educate the public on fire safety. The position, though filled at the time of the merits hearing, had been held open for claimant for at least one year. On cross-examination, the representative testified that the justification for the budgeting of the position was the Fire Department’s need for an ordinary fire inspector. Ordinarily, the position of fire inspector required its occupant to be able to actively combat fires. The position’s current occupant performed the ordinary duties of a fire inspector. No official job description existed for the position which had been offered claimant. Although the representative believed that the Chief would have had the authority to extend a special position to claimant for which no description existed, every position was ordinarily governed by a formal job description.
On July 3, 1991, the JCC entered an order which provided in pertinent part:
In approximately November 1986, [claimant] was offered a position as fire inspector.... The fire inspector’s position was a 40 hour a week job which involved fire prevention, investigating fires, and being *458 at the fire scene and being involved in the overhaul aspect of fires. In order to be a fire inspector with the city, one is required to be state certified and required, by the nature of the job description, to fight fires if necessary. Both the claimant and [the city’s representative] testified that the overhaul procedure of the fire inspector requires the claimant to be on the fire scene at the time the fire is being put out or immediately after. The overhaul of the fire involves pulling down walls and ceilings and exposure to toxic fumes and smoke. This was clearly contraindicated with regard to the claimant’s restrictions.... From the testimony, it appears that this position was the only job offered to him by the City of West Palm Beach.
The JCC therefore awarded claimant wage-loss benefits from April 1986 to the present, penalties, interest, costs, and attorney fees.[1]
The detail in which findings of fact must be stated is set forth in section 440.25(3)(e), Florida Statutes, which provides that “[t]he order ... shall set forth the findings of ultimate facts.” Our Supreme Court has interpreted the statute as requiring:
This statutory directive requires the written identification of all facts essential to industrial claims decisions, with the degree of specificity as to recorded text, source in the record, or other identification determined in the context of the dispute_ In cases where there is limited or no argument concerning the facts, the judges need only state the basic facts required by law to exist in order to sustain or reject an award, and to identify the sources of those facts in the record. Where factual disputes exist, more specific findings are required as to the judge’s basis for reliance, again with adequate references to the record.
Vargas v. Americana of Bal Harbour, 345 So.2d 1052, 1054 (Fla.1976), citing Pierce v. Piper Aircraft Corporation, 279 So.2d 281, 284 (Fla.1973); see also Calleyro v. Mt. Sinai Medical Center, 554 So.2d 1208, 1209 (Fla. 1st DCA 1989).
The order does not indicate whether the JCC overlooked or ignored certain material evidence, such as the letter from the chief of the Fire Department to claimant, the letter from the assistant city attorney to claimant’s counsel, testimony from the City’s representative that the Fire Chief had the authority to offer claimant a sedentary position regardless of the lack of an official description for such position, and other testimony from the parties as to their dealings. Specific reference to this evidence was necessary, in that the central issue in this case was whether claimant was justified in rejecting the City’s offer of employment, and the facts and circumstances of the rejection were highly disputed.
For the foregoing reasons, the award of wage-loss benefits from November 1986 forward is reversed, and this cause is remanded to the JCC for proceedings consistent herewith. The JCC may, in her discretion, take additional evidence.
WIGGINTON and WEBSTER, JJ., concur.

. Although appellants seek reversal of the wage-loss award from April 1986 forward, their arguments address only claimant's entitlement to wage-loss benefits from November 1986 forward,